UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

REBECCA MOREHOUSE, *et al.*,

              **Plaintiffs,**

    v.

STEAK N SHAKE, INC.,

              **Defendant.**

**Case No. 2:16-cv-789**
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

This matter is before the Court on the parties' cross motions for summary judgement. Defendant Steak N Shake, Inc. ("Defendant" or "Steak N Shake") moves for summary judgment against Plaintiffs Rebecca and William Morehouse ("Plaintiffs") on all claims. (ECF No. 27). In turn, Plaintiffs seek summary judgment against Defendant on all claims. (ECF No. 31). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment (ECF No. 27) and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Summary Judgment (ECF No. 31).

### I.

#### A. Factual Background

In October 2011, Plaintiff Rebecca Morehouse ("Mrs. Morehouse") began working as an Assistant Manager at Steak N Shake, Inc. (Mrs. Morehouse Dep. 23:6, ECF No. 25). Initially, Mrs. Morehouse did not enroll in health benefits at Steak N Shake because she was covered under health insurance provided by her husband's employer. (Mrs. Morehouse Dep. 48:2–8). In 2012, following her husband's hospitalization and subsequent job loss, Mrs. Morehouse enrolled

in health benefits with Steak N Shake. (Mrs. Morehouse Dep. 15:2–21). Mrs. Morehouse's elected plan included medical, dental, and vision insurance, and cost her approximately $230 in biweekly payroll deductions. (Mrs. Morehouse Dep. 24:20–25; 25:1–4). Both Mrs. Morehouse and her husband, Plaintiff William Morehouse ("Mr. Morehouse"), were covered under the plan. (Young Decl. ¶ 4, ECF No. 27-1).

In May 2013, Mrs. Morehouse suffered a knee injury after falling at work. (Mrs. Morehouse Dep. 26:11–19). Mrs. Morehouse returned to work the next day, but the knee injury rendered her physically unable to perform her duties. (Mrs. Morehouse Dep. 26:20–25; 27:1–11). As a result, Mrs. Morehouse formally requested a leave of absence on June 2, 2013 through a Management Personnel Action Form. (Def.'s Exhibit A, ECF No. 25). Defendant responded with a letter on June 5, 2013, instructing Mrs. Morehouse to complete paperwork so that it could process her absence under the Family Medical Leave Act ("FMLA"). (Def.'s Exhibit C, ECF No. 25). As instructed, Mrs. Morehouse returned a completed FMLA Certification of Health Care Provider form to Defendant. (Def.'s Exhibit D, ECF No. 25).

Mrs. Morehouse's leave of absence lasted from May 26, 2013 until February 11, 2014, the date on which Defendant terminated her employment. (Young Decl. ¶ 5). Defendant approved the first twelve weeks of Mrs. Morehouse's leave of absence under the FMLA. (Young Decl. ¶ 5). This twelve-week period of FMLA coverage lasted until August 19, 2013. (Young Decl. ¶ 5). Mrs. Morehouse also received workers' compensation benefits in connection with her injury. (Young Decl. ¶ 6). In her deposition, Mrs. Morehouse testified she was unware that she was receiving both FMLA and workers' compensation benefits. (Mrs. Morehouse Dep. 36:13–25; 37:1–4). Specifically, Mrs. Morehouse testified:

> A. I explained to her that I did not know that I was on Family Medical Leave. I said that I was on Workers' Comp. I thought the two were different.

Q. Okay. And this Exhibit E says that your FMLA ended on August 19th, 2013; is that right?

A. Correct.

Q. And the prior two exhibits—so Exhibit C and Exhibit D—are documents that also related to FMLA leave; is that right?

A. Yes.

Q. And so what Steak 'n Shake had told you was that you were on FMLA leave; is that right?

A. Yes.

Q. And nobody ever told you that you couldn't be on both FMLA leave and out on Workers' Compensation at the same time, did they?

A. Right.

(Mrs. Morehouse Dep. 36:13–25; 37:1–4).

During Mrs. Morehouse's leave of absence, all required health insurance contributions were deducted from her workers' compensation payments. (Young Decl. ¶ 6). In addition, Mrs. Morehouse utilized portions of her workers' compensation payments to pay for medical treatment. (Mrs. Morehouse Dep. 33:1–3). On June 20, 2013, Dr. Michael Zilles filed a Physician's Report of Work Ability with the Ohio Bureau of Workers' Compensation recommending that Mrs. Morehouse undergo surgery to repair her knee. (Def.'s Exhibit B, ECF No. 25). However, Mrs. Morehouse did not receive knee surgery until April 2014. (Mrs. Morehouse Dep. 20:7–12). According to her affidavit, Mrs. Morehouse was "waiting for medial meniscus repair surgery to be approved" through her workers' compensation claim. (Mrs. Morehouse Aff. ¶ 10).

On September 9, 2013, Mrs. Morehouse received an email from Eric Salyers, a Benefits Coordinator at Steak N Shake. (Def.'s Exhibit H, ECF No. 25). Mr. Salyers indicated that

$193.18 of Mrs. Morehouse's insurance premiums had not been deducted from her workers' compensation check for the pay period ending on August 27, 2013. (Def.'s Exhibit H). The letter stated the following:

> IN ORDER TO CONTINUE THE ABOVE INSURANCE PLAN(S), YOU WILL NEED TO PAY THE TOTAL AMOUNT DUE IMMEDIATELY. IF FULL PAYMENT IS NOT RECEIVED WITHIN 15 DAYS FROM THE DATE OF THIS NOTICE, YOUR INSURANCE PLAN(S) MAY BE TERMINATED BACK TO THE LAST DATE OF THE PAY PERIOD FOR WHICH INSURANCE PREMIUM CONTRIBUTIONS WERE RECEIVED.

(Def.'s Exhibit H).

Mrs. Morehouse testified that she called Mr. Salyers regarding his email sometime between September 9, 2013 and September 23, 2013. (Mrs. Morehouse Dep. 51:2–6). According to her testimony, Mr. Salyers stated he "could not hold the insurance. It had to be paid." (Mrs. Morehouse Dep. 51:8–9). Mrs. Morehouse had no further contact with Mr. Salyers until September 23, 2013. (Mrs. Morehouse Dep. 51:22–25).

On September 20, 2013, Mrs. Morehouse received a letter from Judy Mason, a Benefits Specialist at Steak N Shake. (Def.'s Exhibit E, ECF No. 25). The letter stated: "Our records indicate that your FMLA expired on 08/19/2013. Upon expiration of your FMLA leave, you will no longer have job protection and you will be expected to return to work unless you are medically unable to do so." (Def.'s Exhibit E, ECF No. 25). Mrs. Morehouse testified that she called Ms. Mason upon receiving the letter. (Mrs. Morehouse Dep. 35:21–23). Mrs. Morehouse further testified that Ms. Mason referred her to Donna Smith, who was unaware that Mrs. Morehouse had not undergone surgery. (Mrs. Morehouse Dep. 35:22–25; 36:1–11). According to Mrs. Morehouse's testimony, Ms. Smith promised to call back after investigating the matter. (Mrs. Morehouse Dep. 35:24–25; 36:1–11).

4

While waiting for a response from Ms. Smith, Mrs. Morehouse emailed Mr. Salyers on September 23, 2013, stating: "I have not received a paycheck for about 3 weeks and I know my ins is due – will pay when I get a paycheck – don't know what the problem is – checking into it." (Pls.' Exhibit No. 4). Mr. Salyers responded via email on October 2, 2013, stating: "I must proceed with cancelling your insurance plans back to the last date where premiums were received." (Pls.' Exhibit No. 4). Mr. Salyers concluded the email by stating: "If you are able to pay to prevent this today, you may still do so. Your outstanding balance right now (as of pay period end 09-24-2013) is $459.80." (Pls.' Exhibit No. 4).

On October 3, 2013, Mrs. Morehouse received a letter from Defendant representing that her insurance plan had been terminated due to the nonpayment of premiums. (Pls.' Exhibit No. 5). The letter stated that Mrs. Morehouse was still responsible for paying any outstanding insurance premiums up to the termination date. (Pls.' Exhibit No. 5). According to the termination letter, Plaintiffs' medical, dental, and vision benefits were effectively cancelled on August 14, 2013. (Pls.' Exhibit No. 5). Upon receiving the letter, Mrs. Morehouse contacted Mr. Salyers. (Mrs. Morehouse Dep. 55:10–16). Mrs. Morehouse testified that she explained the situation, indicating that she had "no way" to pay the insurance premiums due to her husband's illness and the lack of workers' compensation payments. (Mrs. Morehouse Dep. 55:16–24). Mrs. Morehouse further testified that Mr. Salyers responded by stating that he could not help her. (Mrs. Morehouse Dep. 55:25; 56:1).

Mrs. Morehouse testified that she called Defendant four to five times in October 2013, but received no response. (Mrs. Morehouse Dep. 56:5–13). According to Mrs. Morehouse's testimony, Ms. Smith answered a phone call from Mr. Morehouse approximately two to three weeks after the October 3, 2013 insurance cancellation. (Mrs. Morehouse Dep. 56:13–25; 57:1–

3). Mrs. Morehouse's testimony regarding the three-way telephone call between herself, Mr. Morehouse, and Ms. Smith is as follows:

> Q. Okay. And what—what was said during that conversation?
>
> A. I told her that my insurance had gotten canceled. That I still had not returned to work. I was wondering where all my stuff was. You know, am I going to be able to have the insurance—or—or am I going to be able to have the surgery? I can't come back to work until I have it. You know, what am I supposed to do? And her comment to me was they were still checking into it.
>
> Q. So were those questions about your Workers' Compensation claim or questions about these—these benefits?
>
> A. It was about everything. I was trying to get an answer for everything.

(Mrs. Morehouse Dep. 57:4–18).

Defendant terminated Mrs. Morehouse's employment on February 11, 2014. (Young Decl. ¶ 5). Mrs. Morehouse testified that she never received a notice of termination from Defendant. (Mrs. Morehouse Dep. 38:2–23). Rather, Mrs. Morehouse testified that she discovered her termination when a server called her to report that the General Manager had removed her from the staff list. (Mrs. Morehouse Dep. 38:11–18). Mrs. Morehouse testified that after her and her husband's phone conversation with Ms. Smith, she "never heard from Steak N Shake again." (Mrs. Morehouse Aff. ¶ 19).

In January 2014, Plaintiffs acquired private medical insurance. (Mrs. Morehouse Aff. ¶ 23). Their new insurance plan did not include vision or dental benefits. (Mrs. Morehouse Aff. ¶ 23). Mrs. Morehouse later appealed her workers' compensation claim to the Belmont County Court of Common Pleas, seeking back-pay for the workers' compensation payments that ceased in August 2013. (Mrs. Morehouse Dep. 45:1–15). The parties settled for $15,000. (Mrs. Morehouse Dep. 46:17–25; 47:1–10). Mrs. Morehouse testified that she acknowledged the settlement agreement as "valid and enforceable." (Mrs. Morehouse Dep. 47:13–15). Mrs.

6

Morehouse eventually underwent knee surgery in 2014, utilizing her private insurance plan. (Mrs. Morehouse Dep. 69:18–25). Mrs. Morehouse testified that the private insurance covered approximately $42,000 of the $75,000 in procedure costs. (Mrs. Morehouse Dep. 70:11–25; 71:1–7).

## B. Procedural History

On August 15, 2016, Plaintiffs filed the instant action before this Court, 2016. (Pls.' Compl, ECF No. 1). In their pleadings, Plaintiffs allege two claims. First, Plaintiffs contend that Defendant failed to notify them of their right to temporarily continue health benefit coverage under the Comprehensive Omnibus Budget Reconciliation Act ("COBRA"), in violation of the statute. (Pls.' Compl. ¶¶ 23–31). Second, Plaintiffs assert that, by failing to notify Plaintiffs of their COBRA rights, Defendant breached its fiduciary duty in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Pls.' Compl. ¶¶ 34–37).

On November 15, 2016, Defendant moved to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Def.'s Mot. to Dismiss, ECF No. 2). This Court denied Defendants' Motion to Dismiss on September 22, 2017. (ECF No. 11). Defendant moved for summary judgment on April 13, 2018. (Def.'s Mot. for Summ. J., ECF No. 27). Plaintiffs responded with their own Motion for Summary Judgment, as well as an Opposition to Defendant's motion on May 3, 2018. (Pls.' Mot. for Summ. J. and Opp'n, ECF No. 31). On May 23, 2018, Defendant filed a Response in Opposition and a Reply brief. (Def.'s Opp'n and Reply, ECF No. 33). Plaintiffs then filed their own Reply brief. (Pls.' Reply, ECF No. 34). The parties' cross motions for summary judgment are ripe for review.

## II.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## III.

Initially, this Court will analyze the parties' cross motions for summary judgment in relation to Plaintiffs' COBRA claim.

## A. Legal Background of COBRA

In 1974, Congress enacted ERISA to regulate employee pension and welfare benefit plans. 150 A.L.R. Fed. 441, § 2. "COBRA is an amendment to ERISA which ensures that employees who lose coverage under their company's ERISA plan do not go without health insurance before they can find suitable replacement coverage." *Plastic Engineered Components, Inc. v. Titan Indem. Co.*, 974 F. Supp. 1106, 1108 (W.D. Mich. 1997) (citing *Youngstown Aluminum Prod., Inc. v. Mid–West Benefit Serv., Inc.*, 91 F.3d 22, 26 (6th Cir. 1996)).

Congress enacted COBRA to address the problem of "an increasing number of Americans who, formerly covered by employment–related group health insurance subject to regulation by ERISA, found themselves without any health care insurance due to the loss of their group coverage and the increasingly ruinous cost of individual health care policies." 126 A.L.R. Fed. 97, § 2(a). COBRA was purposed "to provide a temporary extension period for group health insurance coverage for those persons who, for various reasons, would have lost such coverage altogether." *Id.*

Under COBRA, employers who sponsor group health insurance plans must offer employees and qualified beneficiaries, "the opportunity to continue their health insurance coverage, at group rates but at their own expense, for at least 18 months after the occurrence of a 'qualifying event' and notice to the affected employee." *Id.* COBRA requires employers to notify employees and qualified beneficiaries of their right to receive continued health insurance benefits within a specific period of time after the occurrence of the qualifying event. *Id.* COBRA defines a qualifying event as follows:

> [T]he term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary: (1) The death of the covered

9

employee; (2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment. . . .

29 U.S.C. § 1163(2).

## B. COBRA Qualifying Event

The first issue on the parties' cross motions for summary judgment is whether a COBRA qualifying event occurred, and if so, when. Defendant contends that Plaintiffs were not statutorily entitled to a COBRA notification because no qualifying event occurred. (Def.'s Mot. for Summ J. at 11).[1] Defendant offers three arguments to support their conclusion. First, Defendant asserts that Mrs. Morehouse's reduction in hours could not result in a loss of coverage under the terms of her insurance plan, thereby precluding a COBRA qualifying event. (*Id*.). Second, Defendant argues that failing to pay insurance premiums does not constitute a COBRA qualifying event. (*Id*.). Finally, Defendant alleges that a denial of workers' compensation benefits is not a qualifying event, regardless of whether it results in a loss of coverage. (*Id*. at 15). The Court will consider each argument in turn.

### 1. Loss of Coverage under Plaintiffs' Insurance Plan

As Defendant accurately states, employers only have a duty to provide a COBRA notification if the employee experiences a qualifying event. (Def.'s Mot. for Summ. J. at 10) (citing 29 U.S.C. § 1163, 1166(4)). Moreover, a reduction in hours must, in the absence of COBRA continuation coverage, result in a loss of insurance to constitute a qualifying event. 29 U.S.C. § 1163(2). *See CLARCOR, Inc. v. Madison Nat. Life Ins. Co., Inc.*, 491 Fed. Appx. 547, 553 (6th Cir. 2012).

---

[1] All references to page numbers in the parties' motions refer to those numbers generated by the Court's electronic filing system.

Defendant argues that Mrs. Morehouse's reduction in hours could not be a qualifying event because, under the Steak N Shake insurance plan, the health-related absence of an eligible employee does not result in a withdrawal of coverage. (Def.'s Mot. for Summ. J. at 7). To be considered eligible under the plan, an individual must:

• Be either: An employee, Member, or retiree of the Employer, and:

• Be entitled to participate in the benefit Plan arranged by the Employer;

• Have satisfied any probationary or waiting period established by the Employer and be Actively At Work;

• Meet the eligibility criteria stated in the Administrative Services Agreement.

(Def.'s Exhibit A at 63, ECF No. 27-1).

The insurance plan represents that "[s]ubscribers who are absent from work due to a health related absence or disability . . . are considered Actively At Work." (Def.'s Exhibit Young Dec., Exhibit A at 99). Consequently, these employees are eligible and "cannot lose benefits because their hours are reduced to zero during a health related absence or leave." (Young Dec. ¶ 3). Heather Young, a Benefits Manager at Steak N Shake, testified that "the Plan treated Ms. Morehouse as being Actively At Work until her employment ended on February 11, 2014." (Young Dec. ¶ 5).

Defendant further contends that Mrs. Morehouse's insurance plan explicitly provided that FMLA leave preserves benefits eligibility. (Def.'s Mot. for Summ. J. at 11). In other words, Defendant argues that Mrs. Morehouse's plan expressly prohibited a loss of coverage due to reduced hours—thereby precluding a COBRA qualifying event. The insurance plan contained the following language:

A Subscriber who is taking a period of leave under the Family and Medical Leave Act of 1993 (the Act) will retain eligibility for coverage during this period. The Subscriber and

11

his or her Dependents shall not be considered ineligible due to the Subscriber not being Actively At Work.

((Def.'s Exhibit A at 186, ECF No. 27-1).

In support of its argument, Defendant offers *Rosecrance Health Network v. Nationwide Life Ins. Co.*, 2009 WL 799076, at *9 (S.D Ohio Mar. 23, 2009), in which this Court found that the plaintiff's reduction in hours did not result in a coverage loss under his insurance plan. Rather, the plaintiff's plan granted him continued health eligibility and coverage for nearly eight weeks after his health-related reduction in hours. (*Id.* at *10). Accordingly, this Court held that COBRA did not trigger until defendant discharged the plaintiff on January 20, 2006, resulting in a loss of benefits. (*Id.*). Because the defendant provided the plaintiff with a COBRA notification within six days of his termination, the defendant did not violate COBRA notification requirements. (*Id.*).

Analogizing *Rosecrance* to the present case, Defendant argues that Mrs. Morehouse's insurance plan preserved her benefits eligibility after her reduction in hours and therefore prevented COBRA from triggering. (Def.'s Mot. for Summ. J. at 11). Defendant points out that although Mrs. Morehouse's benefits terminated on August 14, 2013, several days before her FMLA leave ended on August 19, 2013, the insurance plan expired due to Mrs. Morehouse's failure to pay—not a reduction in hours. (*Id.*). Consequently, Defendant contends that Mrs. Morehouse did not experience a COBRA qualifying event from a loss of coverage due to a reduction in hours. (*Id.*). Rather, Defendant argues it was contractually barred from canceling Mrs. Morehouse's benefits due to a reduction of hours under the terms of her plan. (*Id.*).

Plaintiffs rely on this Court's prior Opinion and Order (ECF No. 11), which held that Plaintiffs sufficiently pled a COBRA qualifying event in their Complaint. (Pls.' Mot. for Summ. J. and Opp'n at 8). Specifically, Plaintiffs assert that a qualifying event occurred when Mrs.

12

Morehouse's reduction in hours "caused a change in the terms of her and her husband's insurance benefits leading to a loss of coverage." (*Id.* at 9). Plaintiffs reiterate the arguments in their Opposition to Defendants' Motion to Dismiss (ECF No. 4), citing *Aquilino v. Solid Waste Servs., Inc.*, 2008 U.S. Dist. LEXIS 47168 (E.D. Pa. June 12, 2008).

In *Aquilino*, the plaintiff experienced a reduction of hours after he suffered a head injury at work, resulting in the deduction of his health insurance premiums from workers' compensation payments rather than from paychecks. (*Id.* at *3). The plaintiff lost insurance after the deductions from his workers' compensation payments ceased and he failed to pay the outstanding premiums. (*Id.* at *4). The *Aquilino* court construed the plaintiff's "loss of coverage" broadly, equating a change in the "terms and conditions" of the existing coverage with a coverage loss. (*Id.* at *14) (citing *Chacosky v. The Hay Grp.*, 1991 WL 12170 (E.D. Pa. Jan. 31, 1991) (*see also* 26 C.F.R. § 54.5980B–4(c)). Ultimately, the court held that a COBRA qualifying event occurred when the plaintiff lost his benefits due to a change in contribution method stemming from a reduction in work hours. (*Id.* at *17).

Applying *Aquilino* to the instant action, Plaintiffs argue that the change in the method of their insurance premium payments amounted to a loss of coverage on May 26, 2013. (Pls.' Mot. for Summ. J. and Opp'n at 8). Although Plaintiffs did not lose coverage until August 14, 2013, they contend the shift in payment method was a "but for" cause of the insurance termination. (*Id.*). As Plaintiffs see it, there would have been no shift in premium payment method and no eventual loss of coverage without Mrs. Morehouse's health-related reduction in hours. (*See Id.*).

Plaintiffs' argument is well taken. Defendant relies on the proposition that Mrs. Morehouse's reduction in hours could not trigger a loss of coverage under the insurance plan. But Defendant's literal construction of "loss of coverage" contradicts COBRA regulations. The

Department of Treasury, which is responsible for promulgating COBRA regulations, defines

"loss of coverage" as "to cease to be covered under the same terms and conditions as in effect

immediately before the qualifying event." 26 C.F.R. § 54.5980B–4(c).

Moreover, as this Court previously noted in its Opinion and Order on Defendant's

Motion to Dismiss (ECF No. 11), several "courts [have] recognized that a qualifying event under

COBRA need not entail a complete loss of health insurance coverage, but need only support the

loss of coverage provided under the same terms and conditions as those obtaining prior to the

event." 126 A.L.R. Fed. 97, § 14 (citing *Collins v Strategic Health Care Management Services,*

*Inc.*, 1992 US Dist LEXIS 6075 (N.D. Ill 1992), clarified 1992 US Dist LEXIS 8021; *Chacosky*

*v. Hay Group*, No. 89–8083, 1991 US Dist LEXIS 1170, 1991 WL 12170, at *9 (E.D. Pa. Feb. 1,

1991); *Sigurdson v. Southmark-Natl. Heritage, Inc.*, CIV. A. 90-2266-V, 1992 WL 331438 (D.

Kan. Nov. 3, 1992)).

Finally, *Rosecrance* is distinguishable from the present case. In *Rosecrance*, the

plaintiff's reduction in hours did not change his method of contribution. *Rosecrance*, 2009 WL

799076, at *5. In fact, a provision in the insurance plan provided that: "If you [employee]

continue to pay the required plan contributions, your coverage will remain in force for no longer

than two months during an approved, non-military leave of absence, layoff, or period of total

disability." *Id.* Accordingly, the plaintiff's coverage and contribution structure remained

unchanged after his health-related reduction in hours. Under the Treasury Department's

definition, the plaintiff did not experience a loss of coverage until his discharge.

In the instant action, Mrs. Morehouse's reduction in hours corresponded with a change in

her contribution method. (Mrs. Morehouse Aff. ¶ 4–7). Mrs. Morehouse testified that she began

receiving workers' compensation checks within a week of her reduction in hours on May 26,

14

2013. (*Id.*). Furthermore, Mrs. Morehouse testified that all insurance payments were subsequently deducted from her workers' compensation payments. (*Id.*). Because Mrs. Morehouse experienced a change in the "terms and conditions" of her pre-injury contribution method, she experienced a "loss in coverage" on May 26, 2013. Therefore, Mrs. Morehouse's reduction in hours corresponded with a loss in coverage. For that reason, Defendant's first argument fails.

### 2. Failure to Pay Insurance Premiums

Defendant further contends it is entitled to summary judgment on Plaintiffs' COBRA claim because Plaintiffs' benefits were terminated for a failure to pay premiums, which is not a COBRA qualifying event. (Def.'s Mot. for Summ. J. at 1). Defendant cites *Jordan v. Tyson Foods*, 257 Fed. App'x 972 (6th Cir. 2007) in support of its argument. In *Jordan*, the plaintiff requested FMLA leave. *Id.* at 973. The plaintiff's employee benefits plan specifically stated that "[a]pplicable contributions must be made to the plan in order to retain coverage during your [employee's] leave of absence." *Id.* When the plaintiff failed to make required contributions, the employer disenrolled the plaintiff from his insurance plan. *Id.* at 974. Approximately four months later, the plaintiff lost his job after his FMLA leave expired and he failed to return to work. *Id.* at 975.

The Sixth Circuit held that the plaintiff's termination was not a COBRA qualifying event because he had already lost coverage for failing to pay premiums. *Id.* at 980. As summarized by the *Jordan* court:

> FMLA leave can result in a qualifying event if an employee who does not return from FMLA leave (1) was covered under her employer's health plan the day before taking FMLA leave, (2) does not return to employment at the end of the FMLA leave, and (3) would lose health coverage in the absence of COBRA continuation coverage. 26 C.F.R. § 54.4980B-10, Q-1.

15

*Id.* Because the plaintiff had already lost coverage for failing to make required contributions, the regulation's third factor was not satisfied. *Id.*

Defendant analogizes *Jordan* to the case at bar, pointing out that Plaintiffs lost their benefits because "Ms. Morehouse did not pay for them." (Def.'s Mot. for Summ. J. at 12) (citing Young Dec. ¶ 8). According to Defendant, Plaintiffs' coverage would have continued had Mrs. Morehouse paid her premiums in August 2013. (Def.'s Mot. for Summ. J. at 13). Consequently, Defendant asserts that Mrs. Morehouse did not satisfy the third requirement of 26 C.F.R. § 54.4980B-10, precluding a COBRA qualifying event from occurring upon the expiration of her FMLA leave. (*Id.*).

Citing FMLA regulations, Defendant further notes that "[a]n employer may discontinue health care coverage for nonpayment after giving the employee notice of this action." (Def.'s Mot. for Summ. J. at 13) (citing *Jordan*, 257 Fed. App'x at 980; C.F.R. § 825.212). The *Jordan* court elaborated on this notice requirement, finding that the defendants' failure to send a discontinuation notice to the plaintiff's correct address was not fatal. *Jordan*, 257 Fed. App'x at 979. Because the employee benefits plan included a description of all payment obligations, the plaintiff had sufficient notice of contribution requirements. *Id.* Accordingly, the *Jordan* court held that constructive notice of a duty to pay heath care premiums is sufficient to meet FMLA regulations. *Id.*

Defendant argues that, unlike the plaintiff in *Jordan*, Mrs. Morehouse received "explicit written notice" of her obligation to make contribution payments on September 9, 2013. (Def.'s Mot. for Summ. J. at 14) (Citing Def.'s Exhibit H). Defendant provided Mrs. Morehouse with additional notice by telephone sometime between September 9, 2013 and September 23, 2013. (Def.'s Mot. for Summ. J. at 14) (Citing Mrs. Morehouse Dep. 51:2–6). Finally, Mrs.

16

Morehouse acknowledged her payment obligations on September 23, 2013 via email, writing: "I have not received a paycheck for about 3 weeks and I know that my ins is due – will pay when I get a paycheck." (Def.'s Mot. for Summ. J. at 14) (Citing Pl.'s Exhibit 4). Consequently, Defendant contends it properly followed FMLA regulations when discontinuing Plaintiffs' coverage for nonpayment, therefore barring a COBRA qualifying event. (Def.'s Mot. for Summ. J. at 14–15).

Plaintiffs argue that a COBRA qualifying event occurred prior to Defendant placing Mrs. Morehouse on FMLA leave. (Pls.' Mot. for Summ. J. and Opp'n. at 9). Plaintiffs distinguish *Jordan* from the instant action by pointing out that, in *Jordan*, "the qualifying event considered was [the] plaintiff's termination." (Pls.' Reply at 1) (Citing *Jordan*, 257 Fed. App'x 972). According to Plaintiffs, this termination was the result of the *Jordan* plaintiff's failure to return to work after the expiration of his FMLA leave. *Jordan*, 257 Fed. App'x at 975. Given the timeline of events, the *Jordan* plaintiff asserted a qualifying event based on 26 C.F.R. § 54.4980B-10, or the interaction between COBRA and FMLA. *Id.* at 980.

Here, Plaintiffs contend that "Mrs. Morehouse's qualifying event occurred when her reduction in hours, resulting from her work injury, caused a change in the terms of her and her husband's insurance benefits leading to a loss of coverage." (Pls.' Mot. for Summ. J. and Opp'n. at 9). Specifically, Plaintiffs contend that:

> Unlike the plaintiff in *Jordan*, Mrs. Morehouse's work hours were not reduced because she decided to take FMLA leave. Her work hours were reduced after suffering a work injury that left her disabled and unable to work. It was not until after this occurrence that FMLA leave was initiated by Defendant.

(Pls.' Mot. for Summ. J. and Opp'n at 9). Consequently, Plaintiffs argue that the interaction between COBRA and FMLA is irrelevant. (*See* Pls.' Reply at 3).

17

Furthermore, Plaintiffs assert that the Code of Federal Regulations characterizes the interaction between COBRA and FMLA as "how the *taking* of leave under the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. 2601-2617) affects the COBRA continuation coverage requirements . . ." (Pls.' Reply at 3) (Citing 26 C.F.R. §54.4980B-10) (emphasis added). Plaintiffs interpret this regulation to only govern the interplay between COBRA and FMLA "where the reduction in hours is caused by an employee's taking of FMLA leave." (Pls.' Mot. for Summ. J. and Opp'n at 9).

Because Defendant placed Mrs. Morehouse on FMLA leave after her hours were reduced due to injury, Plaintiffs argue that the applicable regulation is 26 C.F.R. §54.4980B-4 ("Qualifying Events"), not 26 C.F.R. § 54.4980B-10 ("Interaction of FMLA and COBRA"). (Pls.' Reply at 2–3). Moreover, Plaintiffs contend that an employer should not be able to "subvert COBRA notice requirements by placing an employee on FMLA leave after the occurrence of a qualifying event." (*Id.* at 3). Arguing that the "but for" cause of Plaintiffs' loss in coverage was a reduction in hours, not FMLA leave, Plaintiffs assert that Mrs. Morehouse's nonpayment should not bar her May 26, 2013 qualifying event. (*Id.*).

Finally, Plaintiffs claim that Mrs. Morehouse did not have constructive notice of her contribution requirements because she never received a copy of the employee benefits plan. (Pls.' Mot. for Summ. J. and Opp'n at 9). Although Mrs. Morehouse signed a form confirming her review of "Benefits/Eligibility" in October 2011, Plaintiffs contend that Defendant presented no evidence that Mrs. Morehouse ever received a copy of the Steak N Shake Employee Benefit Plan. (*Id.* at 11) (Citing Pls.' Exhibit C). According to Plaintiffs, Mrs. Morehouse merely assumed that her contribution payments would continue to be deducted from workers' compensation checks during the summer of 2013. (*Id.* at 11).

18

To resolve the present dispute, the Court must determine whether Mrs. Morehouse's reduction in hours on May 26, 2013 was "due to leave that is FMLA leave." 26 C.F.R. § 54.4980B-4(e). If Mrs. Morehouse was on FMLA leave on May 26, 2013, then 26 C.F.R. § 54.4980B-10 ("Interaction of FMLA and COBRA") controls and Defendant succeeds as a matter of law. If she was not on FMLA leave, then 26 C.F.R. §54.4980B-4 ("Qualifying Events") applies and Plaintiffs prevail.

As accurately noted by Defendant, FMLA leave can only trigger a COBRA qualifying event if certain requirements are met. 26 C.F.R. § 54.4980B-10, Q-1. Merely taking leave under FMLA is not enough. 26 C.F.R. § 54.4980B-10, Q-1. Similarly, a reduction of hours does not automatically trigger a qualifying event. According to the Code of Federal Regulations:

> A reduction of hours of a covered employee's employment occurs whenever there is a decrease in the hours that a covered employee is required to work or actually works, but only if the decrease is not accompanied by an immediate termination of employment. This is true regardless of whether the covered employee continues to perform services following the reduction of hours of employment. For example, an absence from work due to disability, a temporary layoff, or any other reason (*other than due to leave that is FMLA leave*; see § 54.4980B-10) is a reduction of hours of a covered employee's employment if there is not an immediate termination of employment.

26 C.F.R. § 54.4980B-4(e) (emphasis added). Therefore, if an employee's reduction in hours was due to FMLA leave, no COBRA qualifying event occurred. 26 C.F.R. § 54.4980B-4(e).

Admittedly, the instant action involves both a reduction in hours and FMLA. Plaintiffs argue that Mrs. Morehouse's reduction in hours occurred several days before the initiation of her FMLA leave. (Pls.' Reply at 2). Although Mrs. Morehouse's last day of work was May 26, 2013, she did not receive a letter from Defendant regarding FMLA until June 5, 2013. (Mrs. Morehouse Dep. 33:23–25; 34:1–16; Def. Exhibit C). Defendant does not dispute this fact. However, Defendant argues that "whether or not Mrs. Morehouse specifically requested FMLA (which the evidence shows she did), SNS had the right and obligation to determine whether she

19

was eligible and to designate her leave accordingly." (Def.'s Opp'n and Reply at 5) (Citing 29 C.F.R. § 825.300(d)(2)).

According to Defendant, Mrs. Morehouse's reduction of hours was covered by FMLA leave as of May 26, 2013, regardless of how it was labeled. (Def.'s Opp'n and Reply at 5). Defendant cites *Davis v. Nissan North America, Inc.*, 2008 WL 4773116, at *12 (M.D. Tenn. 2008), where the court held that an employer can count FMLA leave concurrently with leave under another policy, including workers' compensation. Defendant further points out that Mrs. Morehouse "did take and was granted an FMLA leave." (Def.'s Opp'n and Reply at 5). In addition, Mrs. Morehouse's FMLA leave expired on August 19, 2013—exactly 12 weeks after May 26, 2013. (Young Decl. ¶ 5).

Defendant's assertion has some merit. An employer may count a qualifying employee's leave against his or her FMLA entitlement—even if the employer does not initially designate it as FMLA leave. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 94–96 (2002). The Supreme Court overturned an FMLA regulation to the contrary in *Ragsdale*. Under 29 C.F.R. 825.700(a) (2001), an employer could not credit prior qualifying leave to an employee's total FMLA entitlement unless it provided notification of the leave's designation. *See also Ragsdale*, 535 U.S. at 84. The *Ragsdale* plaintiff, who missed 30 consecutive weeks of work after being diagnosed with Hodgkin's disease, invoked the regulation to get 12 more weeks of leave under FMLA. *Id.* at 85. The plaintiff argued that her 30 week absence did not count against her FMLA entitlement because she was not notified of its FMLA designation. *Id.* Holding that the regulation imposed a "high price for a good-faith but erroneous characterization of an absence as non-FMLA leave," the Supreme Court found that the regulation exceeded the Secretary's authority. *Id.* at 96.

20

However, employers must meet several designation requirements to label an employee's absence as FMLA leave. Under 29 C.F.R. 825.300(a), every employer covered by the FMLA is required to "post and keep posted on its premises, in conspicuous places where employees are employed, a notice explaining the Act's provisions." Electronic posting is sufficient. 29 C.F.R. 825.300(a). In addition, "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. 825.300(b)(1).

Finally, an employer must provide an employee with a written designation notice of the applicability of FMLA. 29 C.F.R. 825.300(d). In this designation notice, the employer "must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice." 29 C.F.R. 825.300(d)(6). Failure to meet these designation notice requirements may render the employer liable for "compensation and benefits lost by reason of the violation." 29 C.F.R. 825.300(e).

Defendant maintains a section on FMLA benefits and eligibility requirements in its Steak N Shake Employee Benefit Plan. (Pls.' Exhibit D at 12–13). This section satisfies the FMLA regulation's general notice requirements. Whether or not Defendant met its eligibility notice obligations to Mrs. Morehouse is less clear. According to her testimony, Mrs. Morehouse never knew she was on FMLA leave. (Mrs. Morehouse Dep. 36:13–25; 37:1–4). Mrs. Morehouse did request a leave of absence via a Management Personnel Action Form on June 2, 2013, yet the form did not include the terms "FMLA" or "Family Medical Leave Act." (Def.'s Exhibit A). Accordingly, Mrs. Morehouse did not explicitly request FMLA leave under 29 C.F.R. 825.300(b)(1). Moreover, although Defendant responded to Mrs. Morehouse's request within

five days, its June 5, 2013 letter did not contain an express statement regarding Mrs. Morehouse's FMLA eligibility. Instead, the letter stated that failure to return the enclosed paperwork "may result in FMLA being denied" and included attachments regarding employee rights and disability information. (Def.'s Exhibit C).

Even if Defendant's eligibility notice was sufficient under 29 C.F.R. 825.300(b)(1), it failed to provide Mrs. Morehouse with a written designation notice pursuant to 29 C.F.R. 825.300(d). As evidenced by the record, the only written notice Mrs. Morehouse received regarding the initiation of her FMLA leave was Defendant's June 5, 2013 letter. A total of eight business days passed between Mrs. Morehouse's initial absence on May 26, 2013 and Defendant's letter. Yet the letter included no mention of Mrs. Morehouse's prior leave being credited to her FMLA leave entitlement. (Def.'s Exhibit C).

Furthermore, Defendant's reliance on *Davis* is misplaced. In *Davis*, the plaintiff received a workers' compensation information packet containing the following statement: "[y]our leave of absence under Nissan's policy will run concurrently with any entitlement to leave that you have under the federal Family and Medical Leave Act." *Davis*, 2008 WL at *7. Quoting several circuit courts, the *Davis* court pointed out that "when an employee's leave qualifies both under the FMLA and under the employer's paid leave policy[,] the employer may either permit the employee to use his FMLA leave and paid sick leave sequentially or the employer may require that the employee use his FMLA leave entitlement and his paid sick leave concurrently." *Id.* at *12 (citing *Ney v. City of Hoisington, Kansas*, 264 Fed. App'x 678, 68 n.1 (10th Cir. 2008)) (quoting *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001)) (*see also Slentz v. City of Republic*, 448 F.3d 1108, 1010 (8th Cir. 2008)). Because the

plaintiff had actual notice that her workers' compensation and FMLA leave would run concurrently, the *Davis* court found the defendant's FMLA designation was proper. *Id.* at *13.

In the case *sub judice*, Mrs. Morehouse had no actual knowledge that her workers' compensation would run concurrently with FMLA leave. (Mrs. Morehouse Dep. 36:13–25; 37:1–4). In fact, Mrs. Morehouse testified that "I did not know that I was on Family Medical Leave. I said that I was on Workers' Comp. I thought the two were different." (*Id.*). Mrs. Morehouse commenced a leave of absence on May 26, 2013, with the understanding that her absence was approved via workers' compensation—not FMLA. (*Id.* at 31:11–18).

Moreover, Mrs. Morehouse lacked even constructive notice that workers' compensation and FMLA leave could run together. In *Kleinser v. Bay Park Cmty. Hosp.*, 793 F. Supp. 2d. 1039, 1047 n.2 (N.D. Ohio 2011), the parties stipulated that the plaintiff's workers' compensation and FMLA leave started on the same date. *Id.* Because the hospital leave policy permitted workers' compensation and FMLA leave to run concurrently, the Northern District of Ohio acknowledged that the plaintiff had sufficient constructive notice. *Id.* Here, nothing in the Steak N Shake Employee Benefit Plan explained the interaction between workers' compensation and FMLA leave. (Pls.' Exhibit D). Consequently, Mrs. Morehouse had no notice that FMLA leave would trigger on May 26, 2013.

Accordingly, the Court finds that Mrs. Morehouse's reduction in hours was not "due to leave that was FMLA leave" pursuant to 26 C.F.R. § 54.4980B-4(e). While Mrs. Morehouse may have been eligible for FMLA leave on May 26, 2013, she was not afforded proper notification of the leave's designation or its concurrence with workers' compensation. Mrs. Morehouse's reduction in hours constituted a COBRA qualifying event, making C.F.R. §54.4980B-4 the applicable regulation. As Mrs. Morehouse experienced both a qualifying event

23

and a loss of coverage on May 26, 2013, her failure to pay premiums in August 2013 did not alter Defendant's obligation to provide COBRA notification. For purposes of resolving the instant action, the Mrs. Morehouse's constructive notice (or lack thereof) of her obligation to pay premiums is irrelevant.

Finally, the Court notes that COBRA was enacted to help workers—not unduly burden employers. When an employee experiences a qualifying event, his or her employer is required to send a notification of eligibility for COBRA continuation coverage. Employers are not expected to pay the employee's COBRA premiums. Nor do the FMLA designation notice requirements constitute a major inconvenience to employers. Employers are simply required to issue a written designation before retroactively designating leave as FMLA and counting it against an employee's FMLA entitlement. 29 C.F.R. 825.300(d). As held by courts in this Circuit, similar notice is required when an employer intends workers' compensation and FMLA leave to run concurrently. *Davis*, 2008 WL at *13; *Kleinser*, 793 F. Supp. 2d. at 1047. While it is up to the employee whether to heed these notices, they serve an important function. Without clear information regarding their rights and benefits, employees cannot make informed decisions. *McDowell v. Krawchison*, 125 F.3d 954, 958 (6th Cir. 1997).

Because Defendant did not properly designate Mrs. Morehouse's absence as FMLA leave, she experienced a qualifying event on May 26, 2013. Defendant was obligated to provide Mrs. Morehouse with a COBRA notification. Consequently, Plaintiffs are entitled to summary judgment on their COBRA claim as a matter of law.

### 3. Denial of Workers' Compensation Benefits

Defendant also contends it is entitled to summary judgment on Plaintiffs' COBRA claim because the denial of workers' compensation benefits is not a qualifying event. (Def.'s Mot. for

Summ. J. at 15). Plaintiffs do not respond to Defendant's argument. Nor does Defendant cite any case law in support of its contention. Because this Court has already determined that Defendant is entitled to summary judgment on Plaintiffs' COBRA claim, it declines to analyze the interaction between COBRA, FMLA, and workers' compensation.

IV.

Next, the Court will consider the Plaintiffs' breach of fiduciary duty claim under ERISA.

## A. Legal Background of ERISA

Congress enacted ERISA in 1974 to provide "comprehensive federal regulation of employee benefits, including both pension plans and welfare benefit plans such as health insurance." 150 A.L.R. Fed. 441, § 2. Accordingly, "ERISA imposes high standards of fiduciary duty upon administrators of an ERISA Plan." *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) (Citing *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995)). The ERISA statute itself contains a civil enforcement provision codifying a participant or beneficiary's right to bring a civil action against a fiduciary for redress. 29 U.S.C. § 1132(a)(3).

Federal courts recognize several ERISA duties, including: (1) the duty of loyalty to participants and beneficiaries, (2) the duty of "care, skill, prudence, and diligence under the circumstances," and (3) the duty to act "for the exclusive purpose of providing benefits to plan beneficiaries." *Krohn*, 173 F.3d at 547 (Citing *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2nd Cir. 1982)). In *Varity*, 516 U.S. at 506, the Supreme Court declined to consider whether ERISA imposes a duty to disclose information in response to employee requests.

However, the Sixth Circuit has held that fiduciaries must also "give complete and accurate information in response to participants' questions." *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992). This duty to inform is not merely the "negative duty not to misinform,

25

but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Krohn*, 173 F.3d at 548 (Citing *Bixler v. Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir. 1993)).

## B. Breach of Fiduciary Duty under ERISA

Defendant argues that Plaintiffs' breach of fiduciary duty claim fails because it is an "impermissible repackaged version of her COBRA claim." (Def.'s Mot. for Summ. J. at 16). Defendant cites *Varity Corp. v. Howe*, 516 U.S. 489 (1996), in which the Supreme Court held that a fiduciary duty claim cannot proceed where another provision will provide appropriate equitable relief. As Defendant correctly notes:

> [T]he statute [29 U.S.C. § 1132(a)(3)] authorizes "appropriate" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

(Def.'s Mot. for Summ. J. at 16) (Citing *Varity*, 516 U.S. at 515).

Defendant points out that the Sixth Circuit has also refused to permit duplicative claims for relief under ERISA. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, (6th Cir. 2015) (plaintiff's ERISA § 1132(a)(3) claim failed because he already had an adequate remedy available from his claim for payment of benefits); *Marks v. Newcourt Credit Grp, Inc.*, 342 F.3d 444, 454 (6th Cir. 2015) (plaintiff may not seek relief for a breach of fiduciary duty under the catch-all provision of § 502(a)(3) if there is adequate remedy under other § 502 provisions); *Moss v. Unum Life Ins. Co.*, 495 Fed. App'x 583, 589 (6th Cir. 2012) ("[I]f § 1132(a)(1)(B) provides the entire remedy for a plaintiff's claims, then the plaintiff cannot also seek relief under § 1132(a)(3)").

For example, in *Jordan*, the plaintiff sought statutory and equitable relief under §1132 of ERISA. *Jordan*, 257 Fed. App'x at 978. First, the plaintiff alleged the defendant breached its fiduciary duty by failing to inform the plaintiff of his payment obligations during a leave of absence. *Id.* at 978. Second, plaintiff claimed that defendant failed to provide the plaintiff with a COBRA notification upon his employment termination. *Id.* Plaintiff tied the two claims together, asserting that had he received better information regarding his payment obligations, he would not have lost coverage and would have been a "covered" employee at the time of his discharge. *Id.* The Sixth Circuit concluded the plaintiff's nonpayment could not be attributed to a breach of fiduciary duty because the plaintiff was fully aware of his payment obligations. *Id.* at 979. Since there was no breach in connection with plaintiff's nonpayment, he was permissibly excluded from COBRA continuation coverage. *Id.* at 979–980. Both claims failed. *Id.*

Comparing *Jordan* to this case, Defendant argues that Plaintiffs alleged "no separate and distinct conduct or injuries" to support their breach of fiduciary duty claim. (Def.'s Mot. for Summ. J. at 16). Defendant points out that Plaintiffs tie up Defendant's alleged failure to provide payment obligation information with its failure to provide a COBRA notification. (*Id.*). Specifically, Plaintiffs stated: "[d]espite having knowledge of Plaintiffs' need for insurance, SNS did not send Plaintiffs notification of their COBRA rights, which constitutes a breach of SNS's fiduciary duty." (Pls.' Compl. ¶ 35). Accordingly, Defendant argues that it is entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim because "it must fail when the COBRA claims fails and because ERISA does not allow pursuit of such a claim when it is unnecessary." (Def.'s Mot. for Summ. J. at 17).

Plaintiffs contend that they are entitled to summary judgment on their breach of fiduciary duty claim because Defendant breached its duty to inform. (Pls.' Reply at 4). Citing *Krohn*, 173

F.3d 542, 551, Plaintiffs note that ERISA imposes a duty on fiduciaries to promptly and adequately respond to employee inquiries regarding benefits. (*Id.*). According to Plaintiffs, Defendant failed to respond to Mrs. Morehouse's requests for information in September and October 2013, despite numerous calls. (Pls.' Mot. for Summ. J. and Opp'n at 12).

Mrs. Morehouse first received notice of her nonpayment on September 9, 2013. (Def.'s Exhibit H). Her benefits were cancelled less than a month later on October 3, 2013. (Pls.' Exhibit No. 5). During this month, Plaintiffs argue they made "significant efforts to question and clarify the status of Mrs. Morehouse['s] leave as FMLA leave, as well as the status of her workers['] compensation checks." (Pls.' Reply at 4). Despite these efforts, Plaintiffs state "it is undisputed that Steak N Shake never responded to the Plaintiff's requests, demonstrating a lack of good faith." (*Id.* at 5).

Plaintiffs analogize Defendant's "indifference" to the facts of *Brown v. Aventis Pharmaceuticals, Inc.*, 341 F.3d 822, 825 (8th Cir. 2003), in which an employer did not respond to an employee's repeated requests for information regarding benefits. (Pls.' Mot. for Summ. J. and Opp'n at 12). The Eighth Circuit held that "[the employer's] failure to act for a period of several months, despite [plaintiff's] repeated phone calls, could be considered bad faith." *Brown*, 341 F.3d at 825.

Defendant's arguments are well taken. Like the plaintiff in *Jordan*, Plaintiffs argue that Defendant's breach of fiduciary duty eventually resulted in a failure to provide adequate COBRA notice. (Pls.' Reply at 5). The Court finds this argument unpersuasive for two reasons. First, like the plaintiff in *Jordan*, Mrs. Morehouse had (at least) constructive notice of her duty to pay premiums. The Steak N Shake Employee Benefit Plan, which Mrs. Morehouse indicated she reviewed (Def.'s Exhibit C), states: "an Eligible Employee who is covered under the Plan is

28

entitled to continue health benefit coverage under the applicable Benefit Feature during the period the Eligible Employee is on a FMLA leave, *provided the Eligible Employee continues to pay the required employee contributions*." (Pls.' Exhibit D) (emphasis added). Moreover, as stated above, Mrs. Morehouse had explicit notice of her duty to pay insurance premiums on September 9, 2013. (Def.'s Exhibit H).

Second, Plaintiffs' argument that Defendant acted in bad faith is unpersuasive. True, Defendant failed to return several of Plaintiffs' calls in October 2013. (Mrs. Morehouse Dep. 56:5–13). However, in her communications with Defendant prior to the insurance cancellation, Mrs. Morehouse did not ask Mr. Salyers for benefits information. She asked for more time to pay her premiums. (Pls.' Exhibit No. 4). Mr. Salyers did not withhold payment obligation information, knowing that his silence could harm Plaintiffs. Instead, Mr. Salyers gave Mrs. Morehouse several opportunities to pay the balance of her insurance premiums before cancelling coverage. (Def.'s Exhibit H; Pls.' Exhibit No. 4).

Consequently, the Court holds that Defendant did not breach its fiduciary duty by failing to inform Mrs. Morehouse of her premium payment obligations. Defendant is entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim as a matter of law.

## V.

Finally, the Court will consider Plaintiffs' claims for damages, including medical expenses, statutory penalties, and attorneys' fees.

### A. Damages Related to Plaintiffs' Medical Expenses

In their Complaint, Plaintiffs assert a damages claim for "medical expenses incurred because of SNS's violations." (Pls.' Compl. ¶ 38). Specifically, Plaintiffs contend they are entitled to $2,549.20 in dental bills accumulated between February 12 and November 24, 2014. (Pls.' Mot.

for Summ. J. and Opp'n at 12). These expenses were incurred after Plaintiffs obtained medical benefits in January 2014, but did not secure dental or vision coverage. (*Id.*). Defendant argues that Plaintiffs are not entitled to the payment of medical expenses because they are "completely offset by the premiums Plaintiffs would have owed." (Def.'s Opp'n and Reply at 11).

Under ERISA's civil enforcement statute, "the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(3). This Court has interpreted "other relief" to include actual damages, or medical expenses minus deductibles and premiums. *Chenoweth v. Wal-Mart Stores, Inc.*, 159 F. Supp. 2d. 1032, 1042 (S.D. Ohio 2001). The Court finds this remedy appropriate in the instant action. Plaintiffs are entitled to the dental costs sustained after their insurance cancellation, less the cost of COBRA premiums they would have paid during that period.

Ms. Young testified that, had Mrs. Morehouse elected COBRA coverage for herself and her spouse during the period beginning September 1, 2013, her monthly premium for medical, dental, and vision benefits would have been $1,017.30. (Supp. Young Decl. ¶ 13). Accordingly, Plaintiffs' premiums would have more than fully offset their claimed dental expenses. (Def.'s Opp'n and Reply at 12). Plaintiffs contend that Defendant has provided no supporting documentation of this premium rate. (Pls.' Reply at 6). Plaintiffs' argument is well taken. Without supporting documentation of COBRA premium rates after the cancellation of Plaintiffs' insurance, the Court declines to calculate the exact value of Plaintiffs' compensatory damages.

The Court finds that Plaintiffs are entitled to their medical costs minus the COBRA premiums they would have paid. If these premiums would have fully offset Plaintiffs' $2,549.20 in dental bills, Plaintiffs recover nothing in medical expenses.

## B. Statutory Penalties

Plaintiffs further argue they are entitled to statutory penalties for Defendant's failure to send a COBRA notice following their May 26, 2013 qualifying event. (*Id.*). The civil enforcement provision of ERISA provides, in relevant part:

> Any administrator (a) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). As with relief pertaining to Plaintiffs' medical expenses, the Court has discretion to award Plaintiffs statutory penalties for Defendant's COBRA violation.

Defendant accurately states that: "[m]any courts have refused to impose any penalty at all under § 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994) (citing *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 588–89 (1st Cir. 1993)) (*see also Godwin v. Sun Life Assurance Co. of Canada*, 980 F.2d 323, 328–29 (5th Cir. 1992)). Moreover, Defendant points out that ERISA § 1132 penalties were "designed to serve a deterrent effect." (Def.'s Opp'n and Reply at 15). Defendant cites *Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 908 (W.D. Mich. 2002), where the court stated: "[t]he whole intent of this discretion is, while avoiding Draconian justice, to construct a remedy which regards the violation with sufficient seriousness that it will not be repeated."

Here, Defendant contends there is no evidence of prejudice or bad faith. (Def.'s Mot. for Summ. J. at 13). Specifically, Defendant argues that any prejudice to Plaintiffs is minimal because they obtained replacement "Obamacare" coverage from Blue Cross Blue Shield of West Virginia in January 2014— thereby preventing a long-term gap in coverage. (*Id.*). Defendant further argues that it demonstrated good faith by the terms of its benefits plan. (*Id.*). Pursuant to the plan's terms,

31

employees could "retain eligibility and continue to be considered 'Actively at Work' beyond the 12-weeks of FMLA." (*Id.*). Finally, Defendant notes that even if Plaintiffs' reduction of hours on May 26, 2013 triggered a COBRA notice, Plaintiff would only have had until September 9, 2013 (44 days of notice plus 60 days) to elect COBRA coverage. (*Id.* at 14). As evidenced by Mrs. Morehouse's failure to pay premiums in early September 9, 2013, Defendant suggests "[i]t is axiomatic that Plaintiffs would have been unable to afford and would have declined COBRA coverage, which was undeniably more expensive than their regular premium payment." (*Id.* at 15).

Defendant's arguments are unpersuasive. "The compulsory character of COBRA's notification requirement has been repeatedly upheld by federal courts." *Holford*, 218 F. Supp. 2d at 906 (citing *MLSNA v. Unitel Commc'ns, Inc.*, 41 F.3d 1124, 1129 (7th Cir. 1994)). Courts have held that a "good faith attempt to comply with a reasonable interpretation of the statute is sufficient." *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir. 1998) (citing *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 782 (S.D. Miss. 1992)). However, the *Holford* Court held that the defendant's COBRA violation was committed in bad faith because "no reasonable interpretation of the statutory language would permit one to believe that a notice in a plan document (or worse in an employee handbook) satisfied the notification requirement." *Holford*, 218 F. Supp. 2d at 909.

In the present case, Defendant provided Plaintiffs with no COBRA notification—not even notice through an employee handbook. Defendant's attempt to justify this inaction with evidence of Plaintiffs' subsequent Obamacare coverage is inappropriate. Regardless of whether Plaintiffs were able to find alternative insurance, Defendant was obligated to provide Mrs. Morehouse with a COBRA notification. It did not. Moreover, Defendant's argument that it demonstrated good

faith by offering "Plaintiffs an opportunity to continue coverage at cost lower than the COBRA rate" is similarly misguided. (Def.'s Mot. for Summ. J. at 16). The mandatory nature of COBRA notification requirements is not affected by employer benefit plans. Nor are COBRA requirements dependent on the employee's personal finances. Arguing that notice is not required because an employee is too insolvent to pay COBRA premiums is a blatant attempt to subvert statutory requirements.

Consequently, the Court finds that Defendant acted in bad faith by failing to provide Mrs. Morehouse with a COBRA notification. Nevertheless, the Court is not required to impose the maximum amount of statutory damages. *Holford*, 218 F. Supp. 2d at 909. Numerous district courts have declined to impose the maximum penalty where the employer acted in bad faith. *Holford*, 218 F. Supp. 2d at 909 (holding that $55 per day was an appropriate rate of statutory damages); *Garred v. General Am. Life Ins. Co.*, 774 F. Supp. 1190, 1201 (W.D. Ark. 1991) (awarding $50 per day for corporation's bad faith conduct); *Thomas v. Jeep–Eagle Corp.*, 746 F. Supp. 863, 864 (E.D. Wis. 1990) (awarding $50 per day for corporation's bad faith conduct).

The exact date of the employee's qualifying event was a matter of some complexity in the present case. Defendant may have made an earnest mistake in initially failing to recognize Mrs. Morehouse's qualifying event on May 26, 2013. In addition, Defendant provided Mrs. Morehouse with notice that her insurance would expire in September 2013. This gesture indicates that Defendant was not oblivious to Mrs. Morehouse's insurance situation.

Taking into account these facts and the example of other district courts, this Court holds that statutory damages should be assessed at a rate of $50 per day from August 2, 2003 (45 days after the qualifying event) to the date on which Plaintiffs acquired new insurance coverage.

## C. Attorneys' Fees

Finally, Plaintiffs claim they are entitled to an award of attorneys' fees. (Pls.' Compl. ¶ 38). ERISA permits the discretionary award of reasonable attorneys' fees "to either party." 29 U.S.C. § 1132(g)(1). When determining whether a party should receive attorneys' fees, the court must consider the following factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985); *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir.1998); *Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 919 (6th Cir.2000).

Here, the factors support the award of attorneys' fees to Plaintiffs. Defendant acted in bad faith by ignoring its obligation to issue a COBRA notification. There is no indication that Defendant would be financially unable to satisfy a fee award. A fee award would likely deter other similarly situated businesses from engaging in misconduct. Moreover, the relative merits of the parties' positions favor Plaintiffs because Defendant's COBRA violation resulted in an injured worker experiencing a long-term gap in insurance coverage. Although Plaintiffs request the fees for themselves, not common participants or beneficiaries, this single factor is not dispositive. Accordingly, Plaintiffs are entitled to reasonable attorneys' fees.

## VI.

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion (ECF No. 27) and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion (ECF No. 31). The Defendant's Motion for Summary Judgment on Plaintiffs' COBRA claim is **DENIED**. The Defendant's Motion for Summary Judgment on Plaintiffs' breach of

34

fiduciary duty claim is **GRANTED**. Plaintiffs are entitled to damages in accordance with this Opinion and Order. The Clerk is **DIRECTED** to enter Judgment forthwith.

**IT IS SO ORDERED.**

11-6-2018
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**