# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: September 13, 2019

Mr. Eric P. Mathisen
Ogletree Deakins
56 S. Washington Street
Suite 302
Valparaiso, IN 46383

Ms. Sonia T. Walker
Calig Law Firm
513 E. Rich Street
Suite 100
Columbus, OH 43215

Re: Case No. 18-4186, *Rebecca Morehouse, et al v. Steak N Shake*
Originating Case No. : 2:16-cv-00789

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0241p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

REBECCA MOREHOUSE; WILLIAM MOREHOUSE,
    *Plaintiffs-Appellees*,

 *v.*

STEAK N SHAKE,
    *Defendant-Appellant*.

No. 18-4186

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cv-00789—Edmund A. Sargus, Jr., District Judge.

Argued: May 8, 2019

Decided and Filed: September 13, 2019

Before: BOGGS, BATCHELDER, and BUSH, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Eric P. Mathisen, OGLETREE DEAKINS, NASH, SMOAK & STEWART, PLLC, Valparaiso, Indiana, for Appellant. Sonia T. Walker, CALIG LAW FIRM, LLC, Columbus, Ohio, for Appellees. **ON BRIEF:** Eric P. Mathisen, OGLETREE DEAKINS, NASH, SMOAK & STEWART, PLLC, Valparaiso, Indiana, for Appellant. Sonia T. Walker, CALIG LAW FIRM, LLC, Columbus, Ohio, for Appellees.

---

**OPINION**

---

  BOGGS, Circuit Judge. Defendant Steak N Shake ("SNS") appeals a grant of summary judgment in favor of Plaintiffs Rebecca and William Morehouse. The Morehouses sued to

recover damages stemming from SNS's failure to send them a notification under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") after SNS put Mrs. Morehouse on workers' compensation and allowed her to take a leave of absence. The district court agreed that SNS had not fulfilled this obligation and consequently awarded damages to the Morehouses. However, we now reverse because the terms and conditions of Mrs. Morehouse's insurance coverage did not change upon her taking a leave of absence and therefore no "qualifying event" occurred that would have obligated SNS to send her a COBRA notification.

I

Mrs. Morehouse began working for SNS as an Assistant Manager in October 2011. After her husband lost his job and insurance coverage following his hospitalization, Mrs. Morehouse enrolled both herself and her husband in SNS's health-benefits coverage with coverage beginning on September 1, 2012 ("the Plan").

The Plan's terms are set forth in benefit booklets issued each September 1 for the following year. The Plan states:

> You have coverage provided under the Plan because of your employment with . . . the Employer. You must satisfy certain requirements to participate in the Employer's benefit plan. These requirements may include . . . Actively At Work standards as determined by the Employer or state and/or federal law and approved by the Administrator, on behalf of the Employer.
>
> . . . .
>
> To be eligible to enroll as a Subscriber, an individual must:
>
> - Be either: An employee, Member, or retiree of the Employer, and:
> - Be entitled to participate in the benefit Plan arranged by the Employer;
> - Have satisfied any probationary or waiting period established by the Employer and be Actively at Work[.]

According to the Plan, "Actively at Work" includes an employee who is "absent from work due to a health related absence or disability[.]" The Plan requires its participants to pay their portion of the cost for coverage in order to maintain benefits:

> If you fail to pay or fail to make satisfactory arrangements to pay any amount due to the Plan . . . the Employer may terminate your coverage and may also terminate the coverage of all your Dependents, generally effective immediately upon their written notice to you.

In addition, "premium must be paid for the time period that services are rendered." Mrs. Morehouse's plan included medical, dental, and vision insurance, and it cost her approximately $230 in biweekly payroll deductions.

On May 25, 2013, Mrs. Morehouse fell at work and injured her right knee. She returned to work the next day, but her injury was too severe to permit her to continue working. Prior to leaving, she completed and signed a Management Personnel Action Form requesting to open a workers' compensation claim and to receive a leave of absence due to her work injury. The form did not mention "FMLA" or the "Family and Medical Leave Act."

On June 5, 2013, an SNS Benefits Specialist sent a letter to Mrs. Morehouse instructing her to complete paperwork so that SNS could process her absence under the FMLA. The letter stated that it was attaching health-care-provider forms "for your FMLA," asked Mrs. Morehouse to return the letter within 15 days "so that your FMLA is processed accurately," and noted that a "[f]ailure to return your paperwork may result in FMLA being denied." Mrs. Morehouse filled out and returned the FMLA Certification of Health Care Provider form to SNS. SNS approved Mrs. Morehouse's leave of absence as FMLA leave (rather than any type of paid leave) for the first twelve weeks, from May 26, 2013 until August 19, 2013, but did not give her any written notice of that designation except for the June letter.

Beginning May 26, 2013, Mrs. Morehouse also began receiving workers' compensation benefits in connection with her injury. Since Mrs. Morehouse was no longer receiving her normal salary and therefore was no longer paying premiums from her usual payroll deductions, SNS began deducting all required insurance contributions from her workers' compensation

checks instead. SNS continued to pay Mrs. Morehouse workers' compensation until August 13, 2013.[1]

On September 9, 2013, Mrs. Morehouse received an email from Eric Salyers, a Benefits Coordinator at SNS. Salyers indicated that $193.18 of Mrs. Morehouse's insurance premiums had not been paid and that Mrs. Morehouse would have to pay the premium in order to continue her insurance coverage. On September 20, 2013, SNS notified Mrs. Morehouse by letter that her FMLA leave had expired August 19, 2013, that she should contact SNS to discuss a reasonable accommodation, and that, if her employment was terminated, she would have the opportunity to continue health benefits through COBRA upon termination of her employment. Having received no payment on the premiums from Mrs. Morehouse, SNS on October 3, 2013, notified the Morehouses that their medical, dental, and vision benefits had been discontinued, effective August 14, 2013, due to the nonpayment of premiums. SNS eventually terminated Mrs. Morehouse's employment on February 11, 2014.

On August 15, 2016, the Morehouses filed a complaint in the United States District Court for the Southern District of Ohio alleging (1) that SNS failed to notify them of their right to temporarily continue health-benefit coverage under COBRA, in violation of that statute, and (2) that SNS breached its fiduciary duty in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to notify the Morehouses of their COBRA rights.

SNS moved for summary judgment, arguing that there had been no "qualifying event" leading to a loss of insurance coverage that would have entitled the Morehouses to COBRA notice. Because there was no COBRA violation, SNS argued, the Morehouses's breach-of-fiduciary-duty claim must also fail. The Morehouses filed an opposition to SNS's motion and also cross-moved for summary judgment, arguing that Mrs. Morehouse's reduction in hours had been a "qualifying event" entitling the Morehouses to COBRA notice. On consideration of both motions, the district court determined, as a matter of law, that a qualifying event had indeed occurred as a result of the reduction in Mrs. Morehouse's work hours on May 26, 2013, the day

---

[1] Mrs. Morehouse brought a separate claim in the Belmont County Court of Common Pleas against SNS for back pay for her terminated workers' compensation. In November 2015, Mrs. Morehouse and SNS settled those claims for $15,000.

No. 18-4186 *Morehouse, et al. v. Steak N Shake* Page 5

after her injury; thus, the Morehouses had been entitled to a notice of their rights to continuation coverage under COBRA.[2]  The court therefore awarded damages of $2,549.20 in dental bills incurred between February 12, 2014 and November 24, 2014; $50 per day in statutory damages from August 2, 2013 until the date the Morehouses had acquired new health insurance in January 2014; and reasonable attorney's fees.  SNS appealed to this court.

II

The court reviews de novo the district court's grant of summary judgment, "applying the same standards as the district court." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014).  "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ibid.* (quoting Fed. R. Civ. P. 56(a)).  "In deciding whether summary judgment was appropriate, the court views the evidence in the light most favorable to the nonmoving party." *FTC*, 767 F.3d at 629 (internal quotation marks and citation omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  In other words, to defeat a motion for summary judgment, the "evidence" must be "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

Because 29 U.S.C. § 1132(c)(1) grants courts discretion in imposing penalties for failure to provide COBRA notice, we review that decision for an abuse of discretion. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994).  If there is no COBRA violation, there is no basis for awarding penalties under § 1132(c)(1).  We also review the district court's award of attorney's fees and costs for an abuse of discretion. *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 376 (6th Cir. 2009).  "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *Bartling*, 29 F.3d at 1068.

---

[2] The district court also dismissed the Morehouses's breach-of-fiduciary-duty claim under ERISA as duplicative of their COBRA claim.  The dismissal of that claim is not in dispute before this court.

No. 18-4186                 *Morehouse, et al. v. Steak N Shake*                 Page 6

III

In 1974, Congress enacted ERISA to regulate employee pension and welfare-benefit plans. "COBRA is an amendment to ERISA which ensures that employees who lose coverage under their company's ERISA plan do not go without health insurance before they can find suitable replacement coverage." *Youngstown Aluminum Prods., Inc. v. Mid-West Benefit Servs., Inc.*, 91 F.3d 22, 26 (6th Cir. 1996). "Under COBRA, an employer that sponsors a group health insurance plan must offer employees and qualified beneficiaries the opportunity to continue their health insurance coverage, at group rates but at their own expense, for at least 18 months after the occurrence of a 'qualifying event' and notice to the affected employee." Russell G. Donaldson, Annotation, *Construction and Application of ERISA Provisions Governing Continuation Coverage Under Group Health Plans (29 U.S.C.A. §§ 1161 et seq.)*, 126 A.L.R. Fed. 97, § 2(a) (2011) (footnote omitted). COBRA requires an employer to provide employees and qualified beneficiaries with notification of their right to receive continued health insurance benefits within a specific period of time after the occurrence of the qualifying event. *See ibid.*; *Jordan v. Tyson Foods, Inc.*, 257 F. App'x 972, 978 (6th Cir. 2007). There is no dispute that SNS sponsors a group health-insurance plan and that Mrs. Morehouse and her husband were qualified beneficiaries under that plan.

The question in dispute is whether a COBRA-qualifying event occurred. COBRA defines a "qualifying event" as follows:

> [T]he term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary: . . . (2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

29 U.S.C. § 1163, 1163(2). Mrs. Morehouse alleges that a qualifying event occurred when her hours were reduced following her May 26, 2013 injury.[3]

---

[3]The parties have devoted a significant portion of their briefing to whether SNS properly placed Mrs. Morehouse on FMLA leave. This is likely due to the regulation stating that "[t]he taking of leave under FMLA does not constitute a qualifying event." 26 C.F.R. § 54.4980B-10, A-1(a). Because we hold that the terms and conditions of Mrs. Morehouse's insurance have not changed and therefore there was no "loss of coverage" under the statute, we need not reach the question of whether Mrs. Morehouse's leave can be considered FMLA leave.

No. 18-4186              *Morehouse, et al. v. Steak N Shake*              Page 7

A "reduction in hours" alone is not necessarily a qualifying event; it must also lead to a loss in insurance coverage. *See* 29 U.S.C. § 1163, 1163(2); *CLARCOR, Inc. v. Madison Nat'l Life Ins. Co., Inc.*, 491 F. App'x 547, 553 (6th Cir. 2012). A "loss of coverage," however, is defined more concretely by the Department of Treasury. Under 26 C.F.R. § 54.4980B-4, A-4(c), a loss of coverage "means to cease to be covered under the same terms and conditions as in effect immediately before the qualifying event." The regulation further clarifies that the "loss of coverage need not occur immediately after the [qualifying] event, so long as the loss of coverage occurs before the end of the maximum coverage period." *Ibid.*[4]

In determining whether there was a loss of coverage here, the district court analogized the case to *Aquilino v. Solid Waste Servs., Inc.*, CIVIL ACTION NO. 2:07-cv-00928-LDD, 2008 WL 11469292 (E.D. Pa. June 13, 2008), an out-of-circuit district-court decision. There, the plaintiff suffered a head injury at work, resulting in a deduction of his health-insurance premiums from workers' compensation payments rather than from paychecks. *Id.* at *1. The court found that a change in the manner by which an employee must contribute to his health-care plan, when triggered by a reduction of work hours, qualifies as a loss of coverage for COBRA purposes. The court explained:

> [T[he method and means by which a plan participant is required to make contributions . . . is an implicit term and a condition of the health plan. Accordingly, a change in the method or means by which an employee is required to make contributions to a health care plan that occurs as a result of a reduction in hours qualifies as a loss of coverage for the purposes of COBRA.

*Id.* at *4.

SNS, in turn, relies heavily on *Jordan v. Tyson Foods, Inc.*, 257 F. App'x 972 (6th Cir. 2007). In *Jordan*, the plaintiff was enrolled in his employer's benefits plan, and premiums were automatically deducted from his paycheck. 257 F. App'x at 973. The plan required employees to pay on their own any required contributions to their plan if they took an approved medical leave. *Ibid*. The plaintiff requested a leave of absence under FMLA; the leave was granted; and the plaintiff stopped receiving his monthly paychecks. *Id.* at 973–74. The plaintiff did not

---

[4]The maximum coverage period under COBRA ends 18 months after the occurrence of a qualifying event if that qualifying event is a termination of employment or reduction of hours. See 26 C.F.R. § 54.4980B-7, A-4(c).

No. 18-4186                    *Morehouse, et al. v. Steak N Shake*                    Page 8

continue to pay his premiums, so the company disenrolled him from the plan and ultimately terminated his employment when he failed to return to work. *Id.* at 974. This court held that no "qualifying event" occurred either as a result of the plaintiff's FMLA leave or upon his termination. *Id.* at 980. Therefore, the employer was not obligated to send a COBRA notification. *Ibid.*

As the district court in the instant case noted, the plaintiff in *Jordan* argued that the "qualifying event" occurred upon his termination, not upon the change in payment methods occasioned by his taking FMLA leave. By contrast, here, the Morehouses argue that the "qualifying event" was Mrs. Morehouse's reduction in hours accompanied by the change in payment method. But in *Jordan* we also addressed the plaintiff's suggestion that he had been entitled to receive a COBRA notice during or at the end of his FMLA leave (which occurred several months before his termination). *See id.* at 979–80.

The *Jordan* plaintiff had argued that he was entitled to COBRA notice under regulations addressing the interaction of FMLA and COBRA. *See id.* at 979. Under 26 C.F.R. § 54.4980B-10, A-1(a), "The taking of leave under FMLA does not [itself] constitute a qualifying event" but "[a] qualifying event under . . . § 54.4980B-4 [nevertheless] occurs" if:

> (1) An employee . . . is covered on the day before the first day of FMLA leave (or becomes covered during the FMLA leave) under a group health plan of the employee's employer;
>
> (2) The employee does not return to employment with the employer at the end of the FMLA leave; and
>
> (3) The employee . . . would, in the absence of COBRA continuation coverage, lose coverage under the group health plan before the end of the maximum coverage period.

We held that the plaintiff had failed to satisfy the third component because "[w]ithout COBRA continuation coverage Plaintiff would have remained covered under the [Company] Plan . . . *as long as he paid his premiums*." *Id.* at 980 (emphasis added). With that statement, we implicitly held that the change in payment method that accompanied the plaintiff's taking FMLA leave did not result in a "loss of coverage," a *sine qua non* for a "qualifying event." In other words, the

No. 18-4186　　　　　　　　*Morehouse, et al. v. Steak N Shake*　　　　　　　　Page 9

plaintiff's failure to pay premiums, not the FMLA leave or accompanying change in payment method, resulted in the loss of coverage.

We find *Jordan* persuasive and adopt similar reasoning here.[5] Furthermore, we now clarify that altering the contribution method alone, as SNS did here when it began deducting premiums from Mrs. Morehouse's workers' compensation checks, does not inherently change the "terms and conditions" of coverage and therefore does not produce a "loss in coverage." *See* 26 C.F.R. § 54.4980B-4, A-4(c) (defining a "loss in coverage" as a change in the "terms and conditions" of coverage).

Nor have the Morehouses identified any other "term" or "condition" of coverage that changed when SNS altered the contribution method. For example, the Morehouses do not contend that the amount of their premiums changed. *See, e.g.*, 26 C.F.R. § 54.4980B-4, A-1(c) (giving the example that an "increase in the premium or contribution that must be paid by a covered employee" would qualify as a "loss of coverage"). Furthermore, at all relevant times the Plan dictated that "premium must be paid for the time period that services are rendered" and that, should the Morehouses "fail to pay or fail to make satisfactory arrangements to pay any amount due to the Plan," SNS had the right to "terminate [their] coverage."

Thus, because the Morehouses did not "cease to be covered under the same terms and conditions" when their contribution method was altered, no qualifying event occurred that would have triggered a mandatory COBRA notification. 26 C.F.R. § 54.4980B-4, A-1(c).

IV

Accordingly, we REVERSE the district court's decision in its entirety, including the awards of damages, statutory penalties, and attorney's fees, and direct the district court to GRANT Defendant SNS's motion for summary judgment.

---

[5]It is true, as the Morehouses point out, that the *Jordan* court relied on the language of 26 C.F.R. § 54.4980B-10, which deals with the "Interaction of FMLA and COBRA"—and not § 54.4980B-4, which deals with "Qualifying Events"—in coming to the above-cited conclusion. However, there is no reason to suspect that "loss of coverage" would mean anything different for one regulation than the other. In fact, as quoted above, 26 C.F.R. § 54.4980B-10 actually *refers to* 26 C.F.R. § 54.4980B-4 when discussing how a FMLA leave could ultimately result in a "qualifying event."

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 18-4186

REBECCA MOREHOUSE; WILLIAM MOREHOUSE,

    Plaintiffs - Appellees,

    v.

STEAK N SHAKE,

    Defendant - Appellant.

**FILED**
Sep 13, 2019
DEBORAH S. HUNT, Clerk

Before:  BOGGS, BATCHELDER, and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED in its entirety, and the case is REMANDED with instructions for the district court to grant Steak N Shake's motion for summary judgment.

              **ENTERED BY ORDER OF THE COURT**

              Deborah S. Hunt, Clerk